Next case Veridis Corporation v. TCA Global Mr. Aiello is here for the appellants Mr. Good morning. Paul Aiello on behalf of the appellants including Mr. Brian Skargaard-Arnigan who is here with us in the gallery today. This is an important case. It involves predatory lending. A lender, TCA, violated, broke promises and conditions in its own loan documents, violated Florida usury law, and basically defied all the reasonable expectations that any borrower has including Mr. Darnigan. There were waivers and releases in the contracts. There certainly were. And the court considered itself powerless to do anything in the faces of those releases and waivers. Why aren't those waivers and releases clear on which the court could base its summary judgment? The releases and waivers cannot destroy the that there's only two ways to purge usury. One is a transaction involving a bona fide purchaser for value under, I'm citing 687.04, that's subsection one. And then in subsection two, if there's a complete abandonment of the usury and a giving back of the interest, our statute says that is how usury can be removed from a transaction. If usury is an affirmative defense, it's going to be waived. It certainly is an affirmative defense that can be waived in court. Only in court? Not in documents outside of court? Absolutely. Otherwise, the borrower does not get any due process. Otherwise, the statute is being violated. There's a non-circumvention rule in the statute. It says there shall be no direct or indirect contract or contrivance to get around this. What state law applies to the usury claim? Clearly not Nevada law. Well, I know why you say that, because Nevada doesn't have a usury law, right? I'm saying that the state law that applies is not Nevada. It is true that Nevada doesn't have a usury law, but that is not the basis for the conclusion. Well, Florida has one. Yes, sir. But its public policy against usury is not strong, is it? Oh, I certainly agree. Doesn't Florida allow parties to contract away the statutory protections? As long as there is a normal relation between the transaction and the choice that's made in the choice of law clause. Otherwise, you are going to set a policy that this is what it's going to risk. Courts unfamiliar with another state's law and how it's being developed are going to be asked to make decisions on a regular basis on arbitrary choice of law clauses. Lenders will completely circumvent the usury law. With Florida borrowers, in fact, Nevada, and say it doesn't apply. Assuming Florida law applies, there is no strong public policy to the extent that it can be waived in court. Back to the release and waiver argument, Your Honor. No positive law, statute, rule, or regulation suggests that lenders can waive usury and loan documents. It's exactly the No, no, no. You are not going to destroy a usury claim just because you have a usury savings clause. We have the non-circumvention rule. We have the cases. We have the public policy. What is the public policy of usury? It elevates the needs of necessitous borrowers. This is what the Florida courts have said. It elevates the needs of necessitous borrowers over the principle of freedom of contract. But if it allows the waiver of that principle, then it can't be a strong public policy. There's no case on point that says that lenders, in their loan documents, can release, waive usury. They have no such case. They have three cases they cited. Gunn is their big one. That's a Florida Supreme Court case. But in all the cases they cited, what is happening is that the borrower is giving up usury in litigation. And if you look at Gunn v. Plumbing, and you look at the two citations in there, and I did that as I was preparing for this oral argument, one of them is McKay v. Thompson. And that's where the court used the language, it's a personal defense that can be waived. When you go to McKay v. Thompson, that case is one where the borrower was relying upon Indiana law in a Florida court, and the court of appeals said, that doesn't work, you didn't plead it specifically enough. So it's a pleading principle when the court says in Gunn v. Plumbing, you can waive usury. It's not an all-universal, all-encompassing principle that justifies a violation of the circumvention rule, the policy of the Florida statute, and every other thing that underlies usury. The other case that's cited in Gunn v. Plumbing was Coral Gable's First National v. Constructors of Florida. It's cited as the basis for why the petition for Rittes or Sherrari was considered. And specifically, what the court said, there's no conflict. Please, look at the facts in the Coral Gable's First National case, because what happened in that case was the lender had a usurious loan, and then they went ahead and did a renewal note, and they had a release with the renewal note. And the Supreme Court in that case said, that's not sufficient to damage the usury, or there's still a usury claim. They don't specifically say, what I'm saying is a novel question under Florida law. They don't say, releases can't ever be used in loan documents, but it's the facts of this case, and usury was affirmed by the Florida Supreme Court. For Rittes, where is it incorporated, in Nevada? It was incorporated in Nevada. It was a shelf corporation. Mr. Jarnigan had it on his shelf. I want to point out two things here. Number one, on the first credit agreement, there's absolutely no connection, none at all, to Nevada. The only thing that they tell you is that we repeated the choice of law clause 20 times. Let me ask you something, though. I mean, the district court concluded that it makes no difference, other than the usury counts, that it makes no difference whether it decides this case under Nevada law or Florida law. Do you agree with that? Yeah, because it doesn't, with respect to the non-usury claims, because the law of these jurisdictions are relatively equal. The court still got the result wrong on a 12b6 juncture. I mean, I'll talk about the good faith. Your point is, or your argument is, that you should win under either Nevada law or Florida law, and it makes no difference. I'm not making that argument on the usury. I understand. Yes, Your Honor, you're right. You're correct. I'm not sure I agree with that, and I think... I'm here to answer any questions the court has, and we've addressed all of this in the briefs. I think that perhaps it does make a difference with respect to the release and waiver claims, that it seems to me, at least under Florida law, because you all pled damages, you have a problem. Under Nevada law, I'm not sure whether you have a problem or not. I mean, you're saying coercion, economic coercion, but because you didn't seek rescission and instead sought damages under Florida law, it seems pretty clear to me that you have a problem. You're referring to Jackson, I believe, Your Honor. You're thinking of the Jackson case, the 11th Circuit case, and in that case, there was a general release, and in this case, there's a general release, but the general releases don't operate in the future. In the situation that the court was faced with in Jackson, it said that a general release cleans everything out, because it came at the end of a case. It was a discrimination case where people were suing for employment discrimination. They were not permitted to take the benefits of the settlement and then say, we still have a claim from the past. First credit agreement, when it's executed, nothing's happened yet. The problems happen after the first credit agreement. But then you still have similar language in the later agreements. And in the second credit agreement, it doesn't have anything to do with the first credit agreement. They have not borne up to any analysis of the language in the second credit agreement. The definitional loan documents, they mushed it together in their briefs. The loan documents pertain to the second credit agreement, not the first credit agreement. The claims with respect to the second credit agreement, they occurred after the second credit agreement was executed. Hold v. Manzini is one of many cases in Florida that say a release does not operate in the future unless it says so. Those release provisions don't operate in the future. In addition to that, all of those release provisions are conditioned on the promise, on the performance of the covenants and the promises in the agreement. This is not unconditional, absolute extinguishment of your claims, this provision. It's conditioned on their performing their covenants. This lender is predatory. It didn't perform any covenant and all of the claims should be preserved. But certainly, the usury claim, certainly the good faith claim, but every other claim as well. And I'd like to address any issues about the language in the releases, but all of this has been made clear in the brief. Let me ask a question about the diversity. I went through the, and I want to confirm this, the principal place of business and the place of incorporation. It seems to me there's complete diversity between the plaintiffs and defendants in this case. I think you challenged that. We thought there was complete diversity and we were put back on our heels when the defendants pointed out, your allegations aren't good enough because these partnerships that we partners, and it's like a babushka doll. You got to open up each partnership to find out where their partners are from. So there was a concession. We didn't plead diversity jurisdiction well enough. I see that I've had my main argument. Is there anything else the court wants to hear from me about right now? Thank you. Thank you, Mr. Aiello. We'll hear from Mr. Shepel. May it please the court. My name is Carl Shepel, Shepel Law, PA, on behalf of the Appalese in this case. First, I'd like to begin by pointing out that in order to proceed with claims that are plainly barred by the terms of general releases, the plaintiffs in this case under the Jackson case, which is 11th Circuit precedent, they needed to seek precision. They didn't do that. And as the Jackson case plainly said, a plaintiff appellant can't have it both ways. They can't accept the benefits of transactions, in this case nearly $8 million in loans that TCA gave, and then seek to avoid that same document over here. That windfall is not permitted under the law in the state of Florida, and that is exactly what the plaintiffs appellants are trying to do in this case. In fact, what they're doing is exactly what the U.S. Supreme Court admonished in the Park Avenue case, which cited gun plumbing with approval, wherein this is a case about a defaulted debtor that is doing nothing more than delaying the election of this particular proceeding. It's important to note here that this is nearly $8 million. That money has not been paid back by the plaintiffs. They signed clear, unequivocal waivers, releases, ratifications, affirmations in the various credit agreements in this case. It is not necessary for the court to reach the choice of law issue to decide this case as the district court decided below. Under either Florida law or Nevada law, a waiver and release is enforceable to waive and stop a party from bringing claims or defenses. That includes claims or defenses that encompass usury, fraud, or civil RICO in this case. Let me ask you about the bad faith claim, though. The District Court there found that that claim was not waived, but it dismissed it on the grounds that it didn't state a claim for relief. I'm not sure that the district court addressed the argument that there was a covenant of good faith to apply for relief in determining whether or not to grant or deny requests for advances. Even though the defendants had the sole and absolute discretion to grant or deny the requests, didn't they have an obligation under the covenant of good faith to make a determination about whether to grant or deny these requests in the exercise of good faith? The answer to that question is no. They couldn't in bad faith decide not to grant a request? It's not a question of good faith or bad faith. The provisions regarding the increases in credit line are up to the sole and absolute discretion of the lender. That discretion may be granted or withheld. It's stated in the credit agreement. That was clearly communicated to the borrower in this case. Doesn't it nevertheless have an obligation to determine whether to grant or deny the requests while applying good faith? In other words, it couldn't have entered into this contract saying that it had the sole and absolute discretion to grant or deny these requests knowing that it never intended under any circumstances to grant the requests, could it? No, but that's not the case here. So then you agree with me that there was an obligation to exercise its discretion in good faith? It's not stated that way under the agreements, Your Honor. It doesn't have to be stated that way. Either they could have entered into the agreements saying that it was their sole and absolute discretion whether to grant or deny these requests intending never to grant any of them under any circumstances, in which case I guess it's your position that there was no requirement of good faith. Or if there was a requirement of good faith, then they could not have done that. So what is your position on that? Sure. Stated another way, Your Honor, there's no provision in any of the agreements to say consent shall not be unreasonably withheld, which would imply a covenant of good faith and fair dealing. That is not in these agreements. What is in these agreements? Can you answer my question? Yeah, I am, Your Honor. Could they have decided that they were never going to grant any of these requests before they entered into this contract? Would that have been okay under this language? No, would not. Why not?  Because there are conditions of precedent that have to be fulfilled in order for the lender to consider a request for an increase in credit. And none of those provisions or conditioned precedents were satisfied in this case. They were not pled to have been satisfied in this case. And Judge Ongaro, in considering count three, specifically said that she scoured the record, looked at the complaint, and all post-December 31st, 2014, allegations related to no allegation that there was a satisfaction of a conditioned precedent that would have triggered an obligation on the part of TCA to exercise any form of good faith or bad faith with respect to granting the request. So that is what the record evidence in this case is. That's not enough under the Iqbal and Twombly standard to plausibly state a cause of action under count three. That's our position, Your Honor. The releases would not release post-release conduct. Do you agree with that? I believe that Judge Ongaro, the way that she interpreted it, was that it only would release past conduct, not future conduct. But there are cases that do stand for the proposition that future conduct can be waived. But that's not the position of Ms. Sheetal. The conduct to prevent refinancing of the second credit agreement would be post-release conduct? That would. But in this case, Your Honor, all the conduct that occurred that was subject to the release and waiver provisions occurred prior to December 31st, 2014. But how could you prevent refinancing of the agreement pre-conduct? It would have to be post-conduct. Well, number one, there is no obligation on the part of TCA to refinance anything. It's in their sole and absolute discretion. And in this case, they did provide additional financing on the first loan twice. They gave initial loan of $2.25 million, increased it to $1 million in the First Amendment, and increased it another half a million in the Second Amendment to the First Credit Agreement. They had no obligation to do it, but they did do that in this case. Let's go back to a question that I raised earlier. What's your position on complete diversity? Well, they withdrew the argument. It's not before the court. And it wasn't before the lower court either. They have a burden to allege under Eleventh Circuit precedent that there's complete diversity if it exists. They did not do that in this case, so that's not before the court, Your Honor. If it's jurisdictional as to the state claims, wouldn't that be something that we would have to address? It's not before the court because they waived their right to present it. So they never asserted a diversity jurisdiction basis in this case. Outside the record, I would proffer to the court that complete diversity did exist at the time this case was filed. However, that's not before the court, and we don't believe it's determinative of the outcome in this case. So, if I may, the issue of usury, the gun plumbing case is dispositive of the usury issue. Well, that involved an in-court waiver. The question is, does it apply to an out-of-court waiver? The Fourth Supreme Court in the gun plumbing case made no distinction that whether it's ... Those were the facts of the case. They were the facts. That is correct, Your Honor. However, that was not the determinative issue that the Florida Supreme Court found. They enforced the waiver of usury as to whether it could be waived or not. The court said that it could be waived, and a party would be a stop from asserting that as a defense in a case under the facts of the gun plumbing case. Those facts and the releases that were cited are very similar to the releases in this case. We believe there's no difference, just as Judge Angaro found, as to the procedural posture, whether it's now or whether it's in litigation. If you can waive and release a claim for usury in litigation, there's no difference as to whether you can do that before. In fact, in a usury claim, usury accrues at the time that the agreement is signed. The court only has to look at the four corners of the agreement to assess the usury issue. In this case, there's a choice of law provision. Here, our position is you don't need to even analyze the choice of law provision because under Florida law, it's waived under gun plumbing, under Park Avenue, and other cases. If the court were to look at the choice of law provision, that choice of law, there's a presumption of validation. In this case, that choice of law provision is presumed to be valid. This is not a normal relation. Would you agree with that? I disagree with that. How many times before had these parties applied Nevada law? Well, TCA only applies Nevada law. It doesn't apply any other law. How could it be normal if it's the first time? I didn't say it was the first time. It does it all the time, Your Honor. That's TCA. TCA always has a choice of law provision of Nevada. The loans- Doesn't it have to be as between the parties, a normal relationship as between the parties, not as to one party? I believe that the case law is that, for example, if one party is domiciled there, that can be determinative to be able to demonstrate a natural relation, such as in the case of Viridis. Viridis is a Nevada corporation that establishes a natural connection with the state. In this case, the loan agreements were payable to TCA in Nevada. TCA is a Grand Cayman Partnership. This is an international transaction. It's not a Florida entity. It designated Nevada law to control the disposition of this particular transaction. It also designated in the promissory notes that the payments would be performed to TCA in Nevada. TCA had an office in Nevada. It's in the record. It's in the promissory notes. Viridis is a Nevada corporation. Low shareholder of Viridis as well. I don't want to have the burden shifted to us, since the burden is on the plaintiff, to be able to properly plead an invalidation of what would otherwise be presumed to be a valid choice of law provision. Judge Ngaro found that they failed to meet that burden. They did not meet that burden in this case because there was enough record evidence to indicate a normal relation to the state of Nevada with the Viridis facts and with the loans are payable to the state of Nevada. The court also further found that she did not need to reach that issue because under either law, and she analyzed it under both Nevada law as well as Florida law, that under either one, the waiver would be valid and enforceable. If the panel doesn't have any further questions, I respectfully request that the panel affirm the district court's decision in this case. Thank you. Thank you. Mr. Schepel, we'll hear again from Mr. Aiello. Your Honors, this is a 12B6 ruling that's before you. Counsel's talking about there being a normal relation. The only thing to measure the normal relation were the allegations and the complaint. There wasn't an evidentiary hearing conducted as is expected under the test is this law that was picked, Nevada law, does it have a connection to these transactions? You just heard counsel say they are not a Nevada entity. They don't have their business there. All of the people on the other side of the transaction were not residents of Nevada. The only thing that they can show is that Viridis, which had its principal place of business in Texas, was insisted by TCA to be in this agreement. Please look at L.R. Belletti. That was a recent case by Judge Huck. He looked for a real connection, not a make-believe connection. In that case specifically, the parties picked Delaware law because it made sense. It's LLC provisions. It wasn't just simply we want to get out of Florida usury law. This lender is routinely violating Florida law on usury. How is it doing that? It says it's putting all these releases and waivers in their agreements. There's not a single case that says they can do that. Let me turn your attention back to the releases and waivers then for a moment, as long as you've mentioned them. Your argument in the briefs and here today has been that lots of things happened after the waivers were in entered into, and so they aren't precluded. It seems to me in having reviewed your complaint that it's not clear. Some of the things are clear, maybe a couple things, because they couldn't have happened beforehand. Other things, I can't tell based on the allegations that are set forth in the complaint when they occurred. It seems that the burden would be on you to plead it clearly to show that the releases and waivers don't apply. I wanted to give you an opportunity to address that. We have dates with every allegation in the complaint. I know it's a long complaint. The case started with other lawyers. It is a long complaint, but we read through those. That's not the issue. The issue's not the length of the complaint. The issue is as long as it is, did you sufficiently allege claims that would plausibly state a if your argument is, well, the release is only released what came before and not after. It seems to me that one of your obligations is to plead with specificity when the incidents occurred that you're complaining of. What I'm saying is it wasn't clear to me with respect to many of the things that are alleged. It's not the length of the complaint that's the problem, although maybe for other reasons, but not for this reason. It's the lack of to tell me why I shouldn't be concerned about that. If you look at the background facts at Rosenbaum, you're going to see that there is a date with everything. This is not something where we're trying to muddy it up and hide when things happened. It's in there. There's also a section specifically about the releases in the complaint that explains why they don't apply. Now, I will acknowledge that in some of the claims, there's conduct related to both the first and the second credit agreements. Our basic argument on the credit agreements, though, is as follows. None of the credit agreements extinguished claims occurring after them. The first credit agreement did not extinguish claims about the first credit agreement because the releases apply backwards. The second credit agreement didn't extinguish claims having to do with the first credit agreement because it doesn't deal with the first credit agreement. We did make the argument about economic compulsion with respect to the amendments, but please understand, Mr. Jarnik could have paid off this loan. They would not let him. They insisted that he stay with them, and the result was this was due to the fact that they would not release money from the lockbox, Your Honor. This is economic compulsion under FINVY Prudential Securities. I'm trying to answer your question, and it's the background facts have specific dates, some of the claims. So I guess, and let me just tie it all up. If it's not, if I can't find it in the background facts, and let me tell you, we looked very carefully, but I will go back and double check, then you're in agreement with me that it was your obligation to plead it sufficiently to in fact then support the district judge's dismissal. Absolutely not with respect to the usury claims, and even the district judge acknowledged there were claims, and there was the good faith claim that came afterward, but with respect to the usury claim, what have you heard? Oh, Mr. Jarnik got an $8 million loan. He doesn't have a usury claim. That doesn't understand usury law. Usury law is a law of forfeiture. Also, Mr. Jarnik has depicted in his complaint exactly what happened to him. Millions of dollars of intellectual property, millions of dollars of real estate have been put outside his reach, and he's not going to get it back because he's had the working capital of his companies destroyed. So he's lost millions. It's not just simply he got $8 million, and even if he did, under the law of usury, that doesn't make a difference because it's a statute of forfeiture, and the case that we cited on this was Richter Jewelry v. Schweinhardt. It specifically says there's no requirement of rescission under Florida usury law. The panel's been very kind. If there are any other questions, if not, we stand on our briefs. Thank you. Thank you, counsel. Court is adjourned.